IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 26, 2005

# STATE OF TENNESSEE v. JAMES C. MCWHORTER

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40200368     Michael R. Jones, Judge**

---

**No. M2004-02804-CCA-R3-CD - Filed December 6, 2005**

---

The defendant, James C. McWhorter, was convicted of two counts of forgery, misdemeanor evading arrest, and felony reckless endangerment. The trial court imposed a four-year sentence for each of the forgery convictions, an eleven month and twenty-nine day sentence for the misdemeanor evading arrest conviction, and a four-year sentence for the felony reckless endangerment conviction. The sentences were ordered to be served concurrently, for a Range II, effective sentence of four years. In this appeal, the defendant asserts (1) that the trial court erred by denying the motion to suppress evidence obtained during a search of his residence; (2) that the trial court erred by denying the motion to suppress the defendant's statement to police; (3) that the trial court erred by denying the motion to sever the offenses; (4) that there was a fatal variance between the indictment and the proof at trial; (5) that Count 3 of the indictment did not charge an offense; (6) that the offenses alleged were legally impossible under the facts of the case; (7) that the evidence was insufficient to support the convictions for evading arrest and reckless endangerment; (8) that the trial court erred by referring to his statement as a "confession;" (9) that the trial court should have given a curative instruction during a co-defendant's testimony; (10) that the sentence is excessive; and (11) that the trial court erred by denying probation. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

James C. McWhorter, Clifton, Tennessee, pro se.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; and Art Bieber and Daniel Brollier, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On March 20, 2002, Christy Hodges Shepherd, who was working as a cashier at the Hilltop Cee Bee Market in Montgomery County, was alerted by the bank to be on the lookout for a specific type of forged check. She was provided a copy of one of the checks. On the following day, a man came into the market and presented a check for cashing that bore the same account number as that provided by the bank. Ms. Shepherd alerted the assistant manager, Brian Bowers, who directed her to telephone the police. According to Ms. Shepherd, the defendant was not the man who presented the check.

After verifying the account number and notifying the manager, Bowers went outside, where he saw a red Dodge Neon being driven away from the store at a high rate of speed. According to Bowers, the driver turned sharply, lost control of the car, and struck a guard rail.

Another employee of the market, Don Baggett, had seen the same Dodge Neon in the parking lot and had observed two men, one white and one black, park the car and enter the store. Baggett, who also looked at the check, saw the black man pause outside of the office, leave the store, and get into the Dodge Neon. Baggett confirmed that neither of the individuals who entered the store were the defendant.

Deputy Robert Michael Oliver of the Montgomery County Sheriff's Department, who was in his patrol car near the Hilltop Cee Bee Market, was notified that two men had tried to cash a forged check at the market. When he saw the Dodge Neon strike the guardrail, he activated his emergency equipment and began to follow. The Dodge Neon sped away, passing cars on the shoulder of the road and driving into the oncoming lane, "zig-zagging back and forth." The chase continued for approximately twelve miles at speeds of over one hundred miles per hour until the car was stopped on the shoulder of the road just inside the Stewart County line. The defendant was the driver of the vehicle. Deputy James Durico, who assisted at the scene of the arrest, searched the vehicle and discovered several pieces of a check on the floorboard behind the driver's seat.

At trial, Madeline Dailey, assistant vice president and branch manager for the First Federal Savings Bank North Clarksville location, testified that a check bearing the routing number for the bank was placed on a check purportedly drawn on Regions Bank. She stated that the account number listed on the check, 0160185038, belonged to a "money order account" at First Federal Savings Bank and not to Rafferty's Restaurant, as indicated on the face of the check. Ms. Dailey also identified the fragments of the check found in the defendant's vehicle as having the First Federal Savings routing number. According to Ms. Dailey, the account number on that check matched the account number printed on the first check. She confirmed that Rafferty's Restaurant did not have an account with First Federal Savings.

Shawn Estes, Comptroller for Rafferty's Restaurant, testified that neither check was a legitimate check drawn on the restaurant's account. He stated that payroll checks for every Rafferty's location was processed out of Bowling Green, Kentucky.

Mark Sletto, Special Agent with the United States Secret Service, testified that he questioned the defendant, who admitted manufacturing counterfeit commercial checks, counterfeit driver licenses, and counterfeit currency. According to Agent Sletto, the defendant explained that he had used two different software programs, My Business Check Writer and Versa Check, to create the checks. He recalled that the defendant acknowledged having used the account numbers from cashiers checks he had purchased.

Brian Thomas testified that he had met the defendant in early March of 2002. He remembered that on March 21, he arranged to meet the defendant so that they could "try to forge checks one more time." According to Thomas, the defendant printed the checks on his computer. Thomas, who was accompanied by Justin Ballard, explained their plan as follows:

> The agreement that we always had was that Mr. Ballard and I would be the actual face [men], we were the ones who actually walked into the store and pretty much cashed the checks ourselves and when we c[a]me back, we would give [the defendant] two hundred dollars and then we would, keep the rest.
> . . . .
> . . . [The defendant] was the one that produced the checks for us, produced the checks and identification and so forth.

Thomas testified that the defendant provided him with an identification card bearing the name "David Watts," which appeared as the payee on the check he tried to cash at the Hilltop Cee Bee Market.

Thomas recalled that as he attempted to pass one of the forged checks at the Hilltop Cee Bee, the clerk became "somewhat suspicious," took the check into the store office, and called in another employee. He explained that he left because he knew "something suspicious was going on and something [was] going to happen." Thomas testified that when he returned to the car, he told the defendant to leave because "it was not going as planned." The defendant drove away but returned to pick up Ballard, who had gone to the store's restroom. According to Thomas, when they saw a police car approaching them, the defendant sped away at a high rate of speed and struck the guard rail while trying to negotiate a turn. Thomas recalled that the defendant drove "as fast as . . . that little thing could go," passing cars on both the right and left. Thomas testified that there were several other vehicles on the road and some were forced to "veer[] off to the side." At trial, he acknowledged that he had entered a guilty plea for his role in the offense and that he had received a two-year probationary sentence and was ordered to pay approximately five thousand dollars in restitution.

Justin Ballard corroborated Thomas's account of the events and described their arrangement with the defendant: "[I]f I cashed the check, [the defendant] would get two hundred [dollars] and I [would] keep three [hundred dollars]. If Mr. Thomas cashed the check, he would get two [hundred dollars] and [the defendant] gets three [hundred dollars]." Ballard acknowledged that he also intended to cash a check at the Hilltop Cee Bee Market, but left when Thomas encountered

difficulty. He confirmed that Thomas and the defendant left the market without him but returned shortly thereafter. Ballard testified that the defendant ripped the check and attempted to throw the pieces out the window as he sped away. According to Ballard, the defendant reached speeds of 120 miles per hour as he fled from the police. He admitted having pled guilty for his role in the offense and receiving two years of pretrial diversion.

Investigator John Michael Stone with the Montgomery County Sheriff's Department, who interviewed the defendant following the arrest, testified that the defendant provided a handwritten statement admitting having created the counterfeit checks and the identification cards used by Thomas and Ballard. According to Investigator Stone, the defendant claimed that Thomas and Ballard forced him to flee from the police, explaining that he wanted to stop but the two men "kept yelling don't you stop." The defendant informed Investigator Stone that he received forty percent of each check cashed. Investigator Stone, who executed a search warrant at the residence where the defendant had been staying, seized several items with the defendant's cooperation, including: Versa Check software, blank check stock, a computer, a printer, various documents, and several fake driver licenses.

I.

The defendant contends that the trial court erred by denying his motion to suppress the items seized pursuant to the search warrant. He asserts that the search warrant is invalid because the affidavit accompanying the search warrant does not allege a specific time and date for the alleged illegal activity and does not, therefore, establish probable cause that the evidence sought could be found at the residence to be searched. The state concedes that the search warrant was void because of the absent date but claims that the search of the residence was valid because the defendant and other occupants of the residence consented to the search.

Our supreme court has previously held that:

[W]hen suppression of evidence seized pursuant to a search warrant is advocated, the burden is upon the accused to prove by a preponderance of the evidence: (1) the existence of a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized; (2) the identity of the items sought to be suppressed; and (3) the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant.

State v. Henning, 975 S.W.2d 290, 298 (Tenn. 1998) (citing State v. Evans, 815 S.W.2d 503, 505 (Tenn. 1991); State v. Harmon, 775 S.W.2d 583, 585-86 (Tenn. 1989)).

The standard of review applicable to suppression issues is well established. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. This court's review of a trial court's application of law to the facts, however, is conducted under a de novo standard of review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

In this case, Investigator Stone testified at the hearing on the motion to suppress that he had failed to include a time and date when the criminal activity was alleged to have occurred. The state argued that a "close reading of the search warrant . . . when coupled with the dates and signatures of Judge Shelton . . . leads to a reading and interpretation of a continuing criminal enterprise that was an ongoing thing." The trial court agreed and denied the motion to suppress.

In State v. Baker, this court concluded that "the absence of a specific date in the affidavit setting out when the illegal activity was observed is not required if the affidavit sets out sufficient facts from which the magistrate issuing the warrant could find probable cause to believe the illegal activity, or other matters justifying a search, are occurring or are present on the premises when the search warrant is issued." 625 S.W.2d 724, 726 (Tenn. Crim. App. 1981), overruled on other grounds by State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984). The existence of probable cause is to be determined on a case-by-case basis and, when making the probable cause determination, "the issuing magistrate should consider whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence." State v. Meeks, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993) (citing United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975); W. LaFave & J. Israel, Criminal Procedure § 3.3(g) (2d ed. 1992)).

In State v. McCary, 119 S.W.3d 226 (Tenn. Crim. App. 2003), this court determined that the lack of a specific date in the affidavit did not render a search warrant invalid where the affidavit alleged that "for some months [the defendant] has been engaging in sexual contact with [Informant D]" and that the defendant "keeps pornographic material . . . in his car, and in a red or burgundy briefcase with a combination lock, and at Central Baptist Church, and at [the defendant's] home." Id. at 249. The panel concluded that the warrant was valid despite the lack of a date because the statements contained in the affidavit "allege[d] illegal activity . . . of a continuing nature." Id.

Here, the affidavit accompanying the search warrant contains the following language:

> Your affiant [asserts] that there is probable cause for believing that [the defendant] forged driver[] licenses for the purpose of passing checks that he had also forged. [The defendant] was apprehended in the act of aiding co-conspirators to flee from the scene of a[n] unsuccessful forgery attempt. [The defendant] confessed to

this, and other forgeries committed with the assistance of his co-conspirators: Brial Ernesto Thomas and Justin DeWayne Ballard. Both Thomas and Ballard gave confessions implicating their involvement with [the defendant], and stating that they witnessed the production and transfer of forged checks and identification at his place of residence.

Your affiant makes oath that there are good grounds and belief that evidence of a crime . . . is possessed or contained upon 24 Millswood Drive in Montgomery County, Tennessee . . . .

Your affiant prays that a warrant issue to search the particularly described location where the described evidence is now believed to be possessed.

The affidavit differs from that in McCary in that the observations of the affiant are written in the past tense rather than the present tense. The final sentence of the affidavit, however, indicates that the evidence "is now believed to be possessed," suggesting the time of the filing of the application for the search warrant. In our view, this language is sufficient to allow the issuing magistrate to determine that evidence of the illegal activity was " present on the premises when the search warrant was issued." Baker, 625 S.W.2d at 726. In consequence, the trial court did not err by denying the motion to suppress evidence seized pursuant to the search warrant.

II.

The defendant next contends that the trial court erred by refusing to suppress the statement he provided to Agent Sletto. He asserts that because the statement was taken after he had been arraigned and after he had requested and been appointed counsel, it was obtained in violation of his right to counsel under both the Fifth and Sixth Amendments. The state concedes that the trial court erred by denying the motion but submits that the error was harmless because the testimony of Agent Sletto was cumulative.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend VI. A defendant has the right to counsel at all "'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'" Maine v. Moulton, 474 U.S. 159, 170 (1985) (quoting United States v. Wade, 388 U.S. 218, 224 (1967)).

The United States Supreme Court has long held that "the [Sixth Amendment] right to counsel attaches only at or after the initiation of adversary proceedings against the defendant . . . . '[W]hether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" United States v. Gouveia, 467 U.S. 180, 187-88 (1984) (quoting Kirby v. Illinois, 406 U.S. 682, 688-89 (1972)). This interpretation achieves the underlying purposes of the Sixth Amendment:

-6-

That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal [prosecution]" and an "accused," but also with the purposes which we have recognized that the right to counsel serves. . . . The "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." United States v. Ash, 413 U.S. 300, 309 (1973). Indeed the right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." Johnson v. Zerbst, 304 U.S. 458, 462-463 (1938).

Although we have extended an accused's right to counsel to certain "critical" pretrial proceedings, United States v. Wade, 388 U.S. 218 (1967), we have done so recognizing that at those proceedings, "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both," United States v. Ash, [ 413 U.S.] at 310, in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." United States v. Wade, [388 U.S.] at 224.

Id. at 188-89. In Tennessee, an arrest warrant, or a preliminary hearing if no arrest warrant is issued, or an indictment or presentment, when the charge is initiated by the grand jury, marks the initiation of criminal charges to which the Sixth Amendment right to counsel attaches. State v. Mitchell, 593 S.W.2d 280, 286 (Tenn. 1980).

The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself ." U.S. Const. amend. V; see also Malloy v. Hogan, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment's protection against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment). Article I, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. "Encompassed within these constitutional provisions is the right to counsel, which is applicable whenever a suspect requests that counsel be present during police-initiated custodial interrogation." State v. Saylor, 117 S.W.3d 239, 244 (Tenn. 2003). When there is an unequivocal request for an attorney, all interrogation must cease, unless the suspect himself initiates further conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994).

As indicated above, the trial court's factual findings on a suppression issue are binding upon this court unless the evidence in the record preponderates against them. Odom, 928 S.W.2d at 23. The prevailing party enjoys the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn therefrom. Id. Review of the trial court's application of law to the facts, however, is de novo. Walton, 41 S.W.3d at 81.

In this case, the defendant had been arrested and arraigned on the charges for which he was later convicted. It was uncontested that the defendant had requested counsel and that the General Sessions Court had entered an order appointing an attorney on the morning following the arrest. Later in the afternoon of that same day, the defendant, who had not had the opportunity to confer with appointed counsel, was removed from his cell at the request of Investigator Stone and taken to an interrogation room where he was questioned by Agent Sletto. The defendant admitted that he was advised of his Miranda rights and that he voluntarily signed a written waiver of those rights. He conceded that he did not request that his counsel be present during the questioning. The trial court denied the motion, ruling as follows:

> At the time of [the defendant's] suppression hearing, the court also heard a post[-]conviction petition [filed by the defendant in an unrelated case]. The proof in the post[-]conviction case clearly establish[ed] that the defendant was given an "OR" bond after having entered a plea of guilty to certain offenses. An attorney represented him at that time. The transcript of the plea hearing [from that case] clearly established that the defendant had been advised of his right to remain silent and his right to counsel. . . . All of this indicates that this intelligent defendant knew that he had a right to remain silent and a right to counsel . . . . Also this decision to talk with Secret Service was made prior to the request for counsel. This defendant is extremely intelligent as viewed from his pro se motions.

> The defendant testified at the suppression hearing. His testimony established that he went to the interview knowing that he had a right to counsel. The defendant's testimony established that this was a treat for him to be removed f[rom] his cell. The defendant knowing his rights waived his rights.

> The right to counsel should be and is closely guarded by the courts. This right should not be denied. No statement should be admitted in derogation of the right to counsel. Weighing all of the facts, this court finds . . . that the giving of the Miranda rights, given the background of the defendant's representation prior to the interview, given the prior advisement of trial rights in court and given the agreement by the defendant to the interview was granted prior to appointment of counsel, that the defendant made an informed as well as intelligent waiver of his right to counsel. Therefore the statement is admissible.

The defendant asserts that because he requested the appointment of counsel at his arraignment, the officers were prohibited from initiating any further interrogation. He equates his request for counsel at the arraignment with a suspect's requesting an attorney during a custodial interrogation. Citing Michigan v. Jackson, 475 U.S. 625 (1986), he additionally claims that because counsel had been appointed but had not consulted with him, the police were prohibited from questioning him outside the presence of his counsel.

-8-

In Jackson, the defendant requested the appointment of counsel at his arraignment. The trial court complied. On the following morning, before Jackson had an opportunity to consult with his counsel, two police officers interviewed him at the local jail and obtained a confession. It was uncontested that Jackson was informed of his Miranda rights prior to the questioning. The United States Supreme Court ruled that the confession should have been suppressed because it was obtained in violation of his Sixth Amendment right to counsel. The Court, observing that "the Sixth Amendment right to counsel at a postarraignment interrogation requires at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation," extended the ruling in Edwards to cover those situations wherein an accused requests the assistance of counsel at arraignment. Id. at 632, 641-42. The Court concluded that the subsequent admonishment and waiver of Miranda rights "could not establish a valid waiver" after there had been a request for counsel, explaining that "just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis." Finally, the Court held as follows:

> Edwards is grounded in the understanding that "the assertion of the right to counsel [is] a significant event," and that "additional safeguards are necessary when the accused asks for counsel." We conclude that the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

Id. at 636 (citations omitted).

In our view, this case is indistinguishable from Jackson. The defendant requested counsel at his arraignment and before he had the opportunity to consult with his counsel, he was interrogated by Agent Sletto. Whether the defendant agreed to the interrogation on the previous day is irrelevant, as is any assessment of the defendant's intelligence or familiarity with the legal system. His request for counsel at arraignment was a "'significant event'" that prohibited the police from initiating any questioning. Id. (quoting Edwards, 451 U.S. at 485). Moreover, under the rationale of Jackson, the defendant's subsequent waiver of his right to counsel was invalid. In consequence, it is our view that the trial court erred by refusing to suppress the statement.

The state, without citing any authority, contends that because the statement to Agent Sletto was cumulative evidence, any error by the admission of the statement was harmless. The erroneous admission of a confession obtained in violation of the defendant's right to counsel is subject to constitutional harmless error analysis. State v. Bates, 804 S.W.2d 868, 876 (Tenn. 1991). Thus, the relevant inquiry is whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. Id.

The defendant provided a written statement to Investigator Stone admitting that he created forged checks, that he gave the checks to Thomas and Ballard, and that he provided them with falsified identification to aid in cashing the checks. Thomas and Ballard testified that the defendant created the checks using his personal computer. Versa Check software was discovered during the search of the defendant's residence. Finally, Ms. Dailey testified that the routing and account numbers on the forged checks were taken from the money order account at First Federal Savings Bank. The defendant's statement to Agent Sletto that he used Versa Check software to create the checks and that he obtained the routing and account numbers from money orders purchased at the First Federal Savings Bank was cumulative to other evidence offered at trial. It is our view, therefore, that the erroneous admission of the statement qualifies as harmless beyond a reasonable doubt. The defendant is not entitled to relief on this issue.

### III

The defendant next challenges the trial court's denial of his motion to sever the offenses. He contends that the forgery charge was not reasonably related to the charges for evading arrest and reckless endangerment. The state submits that the trial court properly found that the charged offenses were part of a common scheme or plan.

"[D]ecisions to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) are to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). "[A] trial court's refusal to sever offenses will be reversed only when the 'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Rule 14 (b)(1) provides as follows:

> If two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others.

Tenn. R. Crim. P. 14(b)(1). The "primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). "In its most basic sense, therefore, any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is 'really a question of evidentiary relevance.'" Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000) (quoting State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999)); see also Shirley, 6 S.W.3d at 248.

Tennessee Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs, or acts" of the defendant when admitted only to show the defendant's propensity to commit the crime charged. See Tenn. R. Evid. 404(b). Rule 404(b) does not, however, bar the admission of acts alleged to be part of a common scheme or plan when relevant to a material issue at trial. See Bunch

v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Before a trial court may deny a severance request, it must hold a hearing on the motion and conclude from the evidence and argument presented at the hearing that (1) the multiple offenses constitute parts of a common scheme or plan; (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses; and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant. Spicer, 12 S.W.3d at 445; see also Tenn. R. Evid. 404(b)(3).

"[A] common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." Moore, 6 S.W.3d at 239 n.7. Three types of common scheme or plan evidence are recognized in Tennessee: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. This court ruled in State v. Hallock that:

> [T]he mere existence of a common scheme or plan is not a proper justification for admitting evidence of other crimes. Rather, admission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue.

875 S.W.2d 285, 292 (Tenn. Crim. App. 1994).

In this case, the trial court denied the defendant's motion to sever the offenses, concluding that "the offenses would establish a common scheme or plan" and that "all of the charges are charges where the evidence of one would be admissible . . . in the trial of the other."

In our view, the offenses were part of the same criminal transaction. "The same transaction category involves crimes which occur within a single criminal episode." Id. at 292. The defendant created two checks on his personal computer using the relevant numbers from a recently purchased money order. He then provided Thomas and Ballard with forged driver licenses and gave each a check to cash. Then the defendant drove them to the Hilltop Cee Bee Market, where Thomas attempted to cash the first check. When the cashier became suspicious, Thomas left the store and got into the car with the defendant, who drove away at a high rate of speed, striking a guard rail as he did so. Deputy Oliver gave chase. The pursuit lasted approximately fifteen minutes and reached speeds in excess of one hundred miles per hour. Under these circumstances, it is our view that the trial court did not abuse its discretion by refusing to sever the offenses.

IV

The defendant asserts that Count 3 of the indictment lacks sufficient factual allegations to charge an offense. He contends that the description of the "certain paper writing" is not specific enough to protect against double jeopardy. The state submits that the indictment is sufficient.

Generally, defenses based upon indictment deficiencies must be presented prior to trial. Tenn. R. Crim. P. 12(b)(2), (f). A valid indictment is essential to prosecution, however, and may be subject to attack at any time if the content does not charge an offense or does not confer jurisdiction. Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998). The essential functions of the indictment are to provide notice of the charge, enable entry of a proper judgment upon conviction, and protect against double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991) (citing State v. Pearce, 7 Tenn. (Peck) 65, 67 (1823); State v. Haynes, 720 S.W.2d 76, 82 (Tenn. Crim. App. 1986)).

Article I, section 9 of the Tennessee Constitution guarantees that "in all criminal prosecutions, the accused [has] the right . . . to demand the nature and cause of the accusation against him, and have a copy thereof." Tenn. Const. art. I, § 9. Regarding the necessary content of an indictment, Tennessee Code Annotated section 40-13-202 provides as follows:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

Tenn. Code Ann. § 40-13-202 (1997).

Here, Count 3 of the indictment provides as follows:

> And the Grand Jurors aforesaid, upon their oath aforesaid, do further present and say that on or about the 21st day of March, 2002, and in the State and County aforesaid, the said JAMES CHRISTOPHER McWHORTER and JUSTIN D. BALLARD unlawfully, feloniously and knowingly, in with intent to defraud Rafferty's Restaurant of the sum of $493.92, did forge, alter, execute or authenticate and make, without the authorization of the said Rafferty's Restaurant, a certain paper writing so that the said paper writing purported to bear the signature of the said Rafferty's Restaurant as a drawer or endorser, in violation of TCA 39-14-114 and against the peace and dignity of the State of Tennessee.

The language of the indictment follows the language of the applicable statute, Tennessee Code Annotated section 39-14-114, and includes the necessary elements of the offense. The forged check is described as a "certain paper writing" purporting to bear the signature of Rafferty's Restaurant as drawer or endorser. The amount of the instrument is $493.92. In our view, this description is sufficient to provide notice of accusation, to allow entry of a proper judgment, and to protect the defendant from a second prosecution for the same offense. See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).

In a related issue, the defendant asserts that there was a fatal variance between Count 3 of the indictment and the proof presented at trial. He claims that the indictment contains allegations that the forged instrument bore the signature of Rafferty's Restaurant and that the proof established that the check, which had been torn into pieces, was signed by "George Harris." The state submits that because Rafferty's Restaurant was identified as the entity responsible for payment of the amount of the check, the signature of Rafferty's Restaurant as drawer or endorser could be the signature of any designated or authorized representative of the restaurant.

Before a variance between an indictment and the evidence could be considered fatal, it must be deemed to be material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984). So long as the defendant is not misled at trial, any variance is not considered to be a basis for reversal. Johnson v. State, 596 S.W.2d 97, 103 (Tenn. Crim. App. 1979).

The evidence adduced at trial established that officers discovered pieces of a check on the floorboard behind the driver's seat of the defendant's car. Ballard testified that the check had been given to him by the defendant and that he had attempted to destroy the check as they fled from police. Ms. Dailey confirmed that those portions of the check that had not been destroyed bore a routing and account number identical to the check that Thomas tried to pass at the Hilltop Cee Bee Market. Rafferty's Restaurant was listed as the account holder. Another piece of the check bore the letters "AMOUN" and below that word, "**493.9." Under these circumstances, it is our view that any variance between the indictment and the proof offered at trial was not fatal. There was no indication that the variance was material and prejudicial or that the defendant was misled in any way. In consequence, the defendant is not entitled to relief on this issue.

V

The defendant next contends that the evidence is insufficient to support the convictions for forgery in Counts 1 and 3 because the allegations are legally impossible. Citing various provisions of the Uniform Commercial Code, he asserts that because the Hilltop Cee Bee Market did not become a holder in due course and because Rafferty's had a legal defense to avoid the payment of the checks, the state failed to prove an intent to defraud, as required by Tennessee Code Annotated section 39-14-114.

Forgery is defined in Tennessee Code Annotated section 39-14-114 as follows:

(a) A person commits an offense who forges a writing with intent to defraud or harm another.
(b) As used in this part, unless the context otherwise requires:
  (1) "Forge" means to:
    (A) Alter, make, complete, execute or authenticate any writing so that it purports to:
      (i) Be the act of another who did not authorize that act;
      (ii) Have been executed at a time or place or in a numbered sequence other than was in fact the case; or

       (iii) Be a copy of an original when no such original existed;
      (B) Make false entries in books or records;
      (C) Issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of subdivision (1)(A); or
      (D) Possess a writing that is forged within the meaning of subdivision (1)(A) with intent to utter it in a manner specified in subdivision (1)(C); and
    (2) "Writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and symbols of value, right, privilege or identification.

Tenn. Code Ann. §39-14-114(a), (b) (1997).  The statute makes no reference to the Uniform Commercial Code, and the defendant has failed to cite any authority for his claim that the provisions of the Uniform Commercial Code provide him with a defense to criminal prosecution.  While the defendant's argument is well-researched, he has failed to establish that he is entitled to any relief on this basis.

VI

   Citing State v. Holbrooks, 983 S.W.2d 697 (Tenn. Crim. App. 1998), the defendant contends that the evidence is insufficient to support the conviction for evading arrest because the state failed to establish that Deputy Oliver had probable cause to arrest him.  He also asserts that the evidence is insufficient to support the conviction for reckless endangerment because the state failed to prove that there were other people in the "zone of danger."  The state submits that the evidence is sufficient to support each of the convictions.

   On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).  Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

   Tennessee Code Annotated section 39-16-603 provides that "it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person . . . [k]nows the officer is attempting to arrest the person; or . . . [h]as been arrested."  Tenn. Code Ann. § 39-16-603(a)(1) (1997).  In Holbrooks, this court ruled that a conviction for misdemeanor evading arrest could not stand where the officer lacked probable cause to arrest the defendant at the time he pursued the defendant.  Holbrooks, 983 S.W.2d at 702-03.  In that case, an officer observed the defendant and several others gathered on the front porch of a

-14-

residence. The officer became suspicious and pursued the individuals when they began to flee. This court ruled that it could not "conclude that the officer was attempting to arrest the defendant because the officer lacked probable cause for an arrest." Id. at 703.

In this case, however, the evidence established that Deputy Oliver had probable cause to arrest the defendant. The manager of the Hilltop Cee Bee Market told the officer that a young man had just tried to cash a forged check inside the store. As the manager spoke with the officer, the defendant drove by and the manager identified the car as belonging to the perpetrator. When the officer gave chase, the defendant increased his speed and did not stop for approximately fifteen minutes. Under these circumstances, it is our view that the evidence is sufficient to support the conviction for evading arrest.

As indicated, the defendant also asserts that the evidence is insufficient to support his conviction for reckless endangerment. Reckless endangerment occurs when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (1997). When committed with a deadly weapon, reckless endangerment is a Class E felony. Tenn. Code Ann. § 39-13-103(b) (1997).

The evidence at trial established that the defendant drove away from the scene at a high rate of speed. Deputy Oliver, Thomas, and Ballard each testified that the defendant reached speeds in excess of one hundred miles per hour during the chase. Each also confirmed that a number of vehicles were forced off of the roadway by the defendant's car. There was proof that the defendant passed vehicles on the shoulder of the road and also in the oncoming lane of traffic. Under these circumstances, it is our view that the evidence was sufficient to support the conviction for reckless endangerment.

VI

The defendant next asserts that the trial court erred by instructing the jury that his statement was a confession rather than an admission. He contends that because the statement did not contain an admission of all the elements necessary to constitute the crime charged, the trial court should not have classified it as a confession. He claims that he was prejudiced by the erroneous classification because the jury was led to believe that he had admitted his guilt. The state submits that because there is no legal distinction between the two terms, the trial court did not err.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99, 100 (1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990); see also Tenn. R. Crim. P. 30. Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510, 519 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim.

-15-

App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

To constitute a confession, a defendant must admit all the elements of the crime with which he is charged. State v. Lee, 631 S.W.2d 453, 455 (Tenn. Crim. App. 1982). An admission, however, is an acknowledgment by the accused of certain facts that tend, along with other facts, to establish guilt. Helton v. State, 547 S.W.2d 564, 567 (Tenn. 1977). Thus, an admission is something less than a confession. Id.

Initially, the jury instructions were not transcribed and were not otherwise made a part of the record on appeal. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review of an issue results in a waiver of that issue. Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). In any event, however, the proof of the defendant's guilt was abundant. It is our view that any error caused by the trial court's labeling the statement as a confession rather than an admission can be classified as harmless, having had no effect on the verdict. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

VII

As his next issue, the defendant contends that the trial court erred by failing to issue a curative instruction after Ballard testified that the defendant had been in jail. The defendant concedes that he should have requested such an instruction but claims that he did not do so because he did not want to draw attention to the statement. The state asserts that the defendant waived this issue by failing to request a curative instruction.

During the opening portion of Ballard's direct-examination, the prosecutor asked him how long he had known the defendant. Ballard responded, "Two years. . . . I don't really know him, I met him two years ago. He's been in jail pretty much since then." At that point the defendant objected and the trial court admonished Ballard, saying, "Listen to the question, Mr. Ballard. Just answer the question that is asked. Do not volunteer information." The defendant did not request a curative instruction and the trial court did not give one.

Initially, because the defendant failed to seek a curative instruction, the issue has been waived. See Tenn. R. App. P. 36(a); State v. Jones, 733 S.W.2d 517, 522 (Tenn. Crim. App. 1987) (holding that "failure to request [a] curative instruction[]" is failure to take action "reasonably available to prevent or nullify the harmful effect of an error"). Moreover, the record establishes that the statement was not made in response to state questioning. The trial court sustained the objection and admonished the witness accordingly. Further, because the proof of guilt was overwhelming, it is our view that the statement had no effect on the verdict and any error, therefore, would qualify as harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

VIII

Finally, the defendant contends that the trial court erred in sentencing. He asserts that the trial court gave too much weight to one enhancement factor. He also contends that the trial court should have granted a sentence of probation. The state submits that the range classification was proper and that the trial court did not err by ordering a fully incarcerative sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997); State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The defendant contends that because two of his prior felony convictions were used to determine that he was a Range II, multiple offender, he had only one prior felony conviction that could have be used to support the application of enhancement factor (2). He argues that the sentence should be reduced.

Initially, the transcript of the sentencing hearing was not made a part of the record on appeal. It is the duty of the appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review of an issue results in a waiver of that issue. Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). In any event, the record establishes that the defendant had prior convictions for fraudulent use of a credit card, a Class D felony, violation of the bad check law, a Class D felony, identity theft, a Class D felony, and theft of property, a Class C felony. Thus, the defendant had criminal convictions in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (2003). The weight given each enhancement and mitigating factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Comments; State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000). That the trial court ascribed particular weight to enhancement factor (2) was not error.

As his final issue, the defendant contends that the trial court erred by denying a sentence of probation. Because the sentence imposed is eight years or less, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b) (1997).[1]  The defendant has the burden of demonstrating his suitability for total probation. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled in part on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000); see Tenn. Code Ann. § 40-35-303(b).

As indicated, the transcript of the sentencing hearing was not included in the appellate record. Other portions of the record, including the presentence report, establish that the defendant had four prior felony convictions at the time of the sentencing hearing and that he was awaiting trial on two of the offenses at the time he committed the offenses in this case.  The record also establishes that the defendant received probation for three offenses in May of 2001.  He was later charged in July 2001 with assault and in August 2001 with identity theft and theft of property. Because "[m]easures less restrictive than confinement ha[d] frequently or recently been applied unsuccessfully to the defendant," see Tenn. Code Ann. § 40-35-103(1)(C) (1997), it is our view that the trial court did not err by denying probation.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

---

[1]Because the defendant was sentenced to incarceration at the time of consideration, he was statutorily ineligible for a community corrections sentence.  See Tenn. Code Ann. § 40-36-106(a)(2) (2003).