Judge Whyte
delivered the opinion of the Court.
The question upon this record is whether, in an indictment upon the Act of 1803, ch. 9, § 2, for the maliciously killing, destroying, or wounding beasts, or for the dismembering or disfiguring beasts, the description of the beast so killed, &c.,. is sufficient in laying it to be “ one horse beast of the value oij &c., of the proper goods and chattels of,” &c. It is urged for the defendant that this description is not certain enough; that the horse should have been particularized by his color, that the defendant may be able to prepare for his defence; and, secondly, that there may be no danger of his being further charged for the same matter in any subsequent proceeding that might be instituted against him, or if he should be questioned again *52 upon a second prosecution, he might be able to avail himself of the present conviction.
Much is to be found in the books upon the certainty to be required in an indictment, and in the more remote periods of our law some of the cases show that, at times, niceties have been indulged in and distinctions countenanced which, in modern times, cannot and ought not to be given into or admitted. These anomalies in the law to be found in the history of criminal proceedings in ancient times, though not now to be encouraged, and much less followed as precedents, still are not to be condemned, considering the times and the circumstance under which they existed, especially as far as they were favorable to the prisoner. They exhibit the virtuous feelings of the worthy judges leaning in behalf of the oppressed, and struggling against the overriding power of the crown, bent upon the destruction of its innocent and too often obnoxious victim. These times are passed over, I hope, never to return, and with them we ought to pass over the precedents to which they gave rise. Indeed, as long ago as the time of Lord Hale, it was observed by that great Judge that the strictness required in indictments had grown to be a blemish and inconvenience in the law and the administration thereof. That more offenders escaped by the over-easy ear given to exceptions to indictments, than by the manifestation of their innocence ; and that the grossest crimes had gone unpunished by reason of these unseemly niceties; 2 Hale, 193; 1 Chitty, 170; and in modern times this opinion of Lord Hale is confirmed and its principle advanced by the greatest and ablest judges. Lord Mansfield maintains that while tenderness ought always to prevail in criminal cases, yet, that it does not require such a construction of words as would tend to render the law nugatory and ineffectual, nor does it require of us .to give into such nice and strained critical objections as áre contrary to its true meaning and spirit. And again, he says, it is almost as bad to let a crime go unpunished as to permit an innocent man to suffer; 1 Leach, 383; 1 Chitty, 170; see Lord Kenyon on this in 1 East. 311, and Lord Ellenborough in 5 East. 260. Chitty, in his very able review of the criminal law, says, 1 vol. 171, in criminal cases, where the public security is so deeply interested in the prompt execution of justice, it seems the minor consideration should give way to the greater, and technical objections be overlooked, rather than the ends of society be defeated.
These being the general principles pervading criminal proceedings on questions of the nature of the present, let us keep them in view in the examination of the present case, in reference to the description of the offence charged in the indictment, and see whether, after the verdict of guilty, the judgment thereon for the present objection should have been arrested or now reversed for error.
The description of the offence charged in an indictment ought to be *53 competent to three purposes: first, competent to the information of the defendant, that he may know what offence he is called upon to answer ; second, competent to the information of the Court, that it may see a definite offence on record to apply the judgment, and the punishment which the law prescribes; third, competent to the protection of the defendant against a future prosecution for the same offence.
As to the first, whether it gives sufficient information to the defendant of the offence charged against him; what person having a knowledge of this Act of 1803, ch. 9, § 2, and every person, every member of the body politic, upon whom it is intended to operate, has in contemplation of law a knowledge of it, for every man is presumed to know the law; a contrary doctrine being incompatible with the nature of civil society. What capacity is it, I ask, short of that imbecility to which the law will not impute a crime, that will not understand what is meant by killing a horse beast? is the expression of killing a black gelding more intelligent, or would the descriptive adjuncts of black, gray, &c., showing color, admitted by the argument to be sufficient, constitute any real difference ? Will not the most ordinary and common capacity comprehend that the killing imputed to him by this, of horse beast, is of an individual of the horse kind, which I shall show presently is all the law requires, as contradistinguished from an individual of the cow kind, or any other kind of beast within the purview of this Act. It is not to be expected that the identity of the beast killed can be ascertained by description alone, when that beast is not the only one of the kind, but one of many of the same kind. For example, let there be two indictments, a prior and a subsequent one, against the same person for the same charge or offence, and let this charge or offence be described as special and particular as language can admit of, or as the argument contends for, and upon the first he is acquitted or convicted, and to the second indictment he pleads in bar the former acquittal or conviction : does the description of black gelding in both indictments prove or show the identity of the gelding,- or that the black gelding in the second indictment is the same black as in the first indictment ? Is there anything, or can there be anything, put in the description upon the paper in the indictment that can show this thing? It is impossible., whenever there are two or more things of the same kind, for non constat, to which of them the second indictment applies; for though convicted of killing one black gelding, he may still be convicted of killing the other. As, therefore, there are more black geldings than one, so the law, as well as fact, admits the same man to own more than one, and which one is the subject-matter of charge only can be identified by proof, to which the description in the indictment, in the nature of things, is wholly incapable. If there was only one thing of the kind in existence, then the description of that thing in the second indictment would be a sufficient allegation of the sameness *54 of the charge, for there was nothing else for the description to attach upon.
Hence it cannot appear, from the description of the offence in the indictment alone, that the offence there laid is the very same offence that was laid in a former one, but the sameness or identity must be averred in the plea of the defendant. 2 Hale, 241. For example, if the defendant pleads a former acquittal, he not only states .the former indictment which states the charge, and his acquittal thereon, but he also avers that he is the same person in the aforesaid indictment named and thereof acquitted, and not another or different person; and also must aver that the said offence, stating it, in the indictment aforesaid, pleaded, specified, and supposed to be done by him, is the same identical and individual offence as in the said indictment to which he is now pleading is supposed and alleged to have been done and committed by him, and not other or different. 1 Chitty, 460; 4 Chitty, 528 - 9; 2 Leach, 712 ; to which, on the part of the State, the attorney-general may reply, taking issue on the averments of identity, &c.
That degree of precision in the description of an offence cannot be given in the indictment so as to distinguish it per se from all other cases of a similar nature; such a discrimination amounting to identification must rest in averment, and its absence in description can be no test of the certainty required either for defence against the present or protection against a future prosecution for the same matter. But that certainty only is necessary that will enable a jury to decide in the case of theft, whether the chattel proved to have been stolen is the very same with that upon which the indictment is founded, and show judicially to the Court that it could have been the subject-matter of the offence charged. This will secure the defendant from future prosecution for the same offence after acquittal or conviction. See 1 Chitty, 235-6. These purposes can be as well answered by the description in this indictment as by that contended for by the defendant. The charge is in truth the same in both, and the defendant could plead his acquittal or conviction of either, against the other, by the means of proper averments; for it would be absurd to suppose that by an immaterial variation, the prosecutor could change the rights of the defendant and subject him to a second trial; see 1 Chitty, 453; 2 Hale, 179, 244; 2 Inst. 318, as if the person killed be differently, though sufficiently, described in two distinct indictments, the defendant may show the same individual is intended. 1 Chitty, 453; 2 Hale, 244.
No case has been cited for the defendant to support the position taken by him, either of our own State, under this Act of 1803, or any of our sister States of the Union, under similar Acts, or other cases that would bear upon the question by analogy. The most approximating English statute is that of the 9 th Geo. 1, ch. 22, commonly called the black Act, *55 passed to prevent the malicious killing, maiming, or wounding any cattle. It differs from our Act of 1803, ch. 9, in being much more penal. That makes the offence felony without benefit of clergy, punishable by death. Ours only a misdemeanor, punishable by fine and imprisonment. Notwithstanding the English Act is much stronger than ours, yet no case has been produced where an exception has been taken to an indictment under it, because the horse, cow, or other cattle within its purview was not designated by its color in forming the description. If such an objection could have been tenable, it would have been taken, as is proved by Dawson’s case, where no color was laid. The counsel for the defendant cited a precedent of an indictment under this statute from 3 Chitty, 1086-7, which, in the description of the offence, lays it to be one black gelding of, the price of £14, of the goods and chattels of one J. J. maliciously did kill, &c. Here color is laid, it is true, but it must be observed to the counsel that upon looking further into the next following pages of the same book, we find two other precedents under the same Act; in the first the description is, “ one cow, of the price of £ 7, of the goods and chattels of C. J. maliciously did maim, &c.” Here no color is laid. In the second precedent the indictment has four counts, the description in the two first is, “ one mare of great value, to wit, of the value of £ 20, of the goods and chattels of one W. A. maliciously did kill, &c.” That in the third count is, “ one other mare of the value of £ 20 of the cattle, goods and chattels and property of the said W. A. maliciously did Hill, &c.” The fourth count was the same as the third, only it left out the copulative “ and,” between the word “ goods” and the word “ chattels.” This last precedent was the indictment against Dawson, on which he wms convicted and executed, although there were four counts in it, and the attorney-general had paid so much attention to its structure, yet it never occurred to him that it would be material to lay the color, nor to the counsel in the defence, for they took no exception to the want of it. See Chitty ubi supra, notis. Of these three precedents from Chitty, supposing the two first to be precedents of indictments on which valid convictions had taken place, though it is not so stated there or in the books from which they are taken, but admit that to be the case, the conclusion is, from the books, that they are both good, and that the color either may or may not be laid as a part of the description. This is also my own opinion. I do not remember that any objection was taken to the term “ horse,” contending that instead thereof the term “gelding” or the term “mare,” according to the case, ought to have been used. On this, however, there cannot be any doubt, for in larceny, which is stronger than misdemeanor, the present case, horse is a sufficient description. Thus, in 2 Hale, 132, Lord Hale says, an indictment against it, quod felonice cepit et asportavit bona et catálla B, without showing what in certain, as scilicet unum equum, unum bovem, &e., is not good. So *56 in page 184 of the same book, he says an indictment against it, quod f¿Io-nice abduxit unurn equum, without saying cepit is not good. And again, in another place, he says, it is indicted that furatus est unum equum, it is but a trespass for want of the word felonice. In 1 Leach, 467, there is a precedent in point; the case is the King v. Justin Harvey. The charge there is laid thus, “for that he, on the 9th Sept. 1788, one horse, of the price of eight pounds, of the goods and chattels of Aaron Patrick, feloniously did steal, take, and carry away.”
There is, therefore, no error in rendering judgment by the Circuit Court, and therefore it must be affirmed.