IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

**STATE OF TENNESSEE v. CARLOS WEEKS**

**Appeal from the Criminal Court for Shelby County**
**No. 03-03068     Carolyn Wade Blackett, Judge**

---

**No. W2004-02235-CCA-R3-CD  - Filed June 23, 2005**

---

The defendant, Carlos Weeks, was indicted in Shelby County for four counts of aggravated robbery. Two of the four counts were alternative charges. The defendant was convicted of all four counts and the trial court merged the alternative counts into two convictions. The trial court imposed a concurrent, Range I sentence of ten years for each of the two offenses. In this appeal as of right, the defendant asserts that there is a material variance between the indictment and the evidence presented at trial and that the evidence is insufficient to support either conviction. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ. joined.

Robert Wilson Jones, District Public Defender (of counsel); and Tony N. Brayton (on appeal) and R. Trent Hall (at trial), Assistant Public Defenders, for the appellant, Carlos Weeks.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Michael Davis, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

On the evening of August 21, 2002, Otha Broome, the owner of Lee's Grocery located at 583 South Parkway East in Memphis, was on duty with Angela Jones, his fiancee and the cashier for the grocery. At approximately 9:00 p.m., the defendant entered the grocery, asked what time the store closed, and shopped for soap. He left shortly thereafter. Several minutes later, two armed men wearing masks entered the grocery and demanded money. One of the gunmen searched Broome and took his wallet and the nine millimeter gun that was in his possession. The other gunman held a gun on Ms. Jones and had her empty the cash register. There were two customers in the store at the time of the robbery.

At trial, Broome, who had known the defendant for approximately seven years, testified that the defendant was a regular customer at his store. He stated that when the gunmen entered his store, he immediately recognized the defendant as the shorter of the two, even though the defendant was wearing a different shirt than when he had been in the store a few minutes earlier. He explained that while the taller gunman searched him, he was staring at the defendant, who was no more than three to four feet away.

Broome testified that after the gunmen left his store, he took a nine millimeter gun from beneath the cash register, followed them outside, and saw both men walking around the side of his store with their hats and masks removed. Broome maintained that he was able to clearly see both of their faces at this point, as they were standing beneath a bright light affixed to the side of the store. He stated that he fired several shots in their direction and that they fled the scene.

According to Broome, the police arrived at the store shortly after he fired his weapon, and he identified the defendant as one of the gunmen, providing his name and former place of work. He stated that he provided the police with a description of the gun used in the robbery and identified the weapon at trial. He also confirmed that he later positively identified the defendant as one of the gunmen in a photo spread presented to him by the police.

Ms. Jones, who was a state witness, testified that when the gunmen entered the store, there was one customer at the register and one on the pay phone. She acknowledged that both gunmen looked familiar to her, but she did not realize until after they left that one of them "looked like a person who had come into the store prior to the robbery." She claimed that she recognized the shorter of the two gunmen, who stood by the door and held a gun on the customers and Broome. Ms. Jones testified that after the gunmen left the store with the money and the items taken from Broome, she handed a second gun to Broome from behind the counter and then tried to call 911 but was unable to do so because the customer at the pay phone had left the phone off the hook. She explained that when she was finally able to call, she learned that the police were already on their way to the store in response to the gunshots.

Ms. Jones identified the defendant from a videotape of the robbery as a frequent customer and as the man who had come into the store just prior to the crime. While acknowledging that she could not be positive that the defendant was one of the gunmen because of the mask and hat, she did state that she thought he was one of the gunmen based on height and skin color. Ms. Jones testified that she was no more than ten to fifteen feet from the individual she believed to be the defendant during the robbery.

Julius Smith, who worked at an automotive store near Lee's grocery on the night of the robbery, testified that he saw two men standing outside the grocery and that one of them went inside. He remembered that when the man came back out of the store, the man waiting outside of the store handed him a jacket, a mask, and other items and then both went inside. According to Smith, who was some fifty yards away, he could see the reflection of gun metal in the hands of each of the two men and could see that each wore a mask.

Maurice Jones, one of the customers of the grocery at the time of the robbery, testified that as he was getting ready to leave the store, a man placed a gun to his head and ordered him back inside. According to Jones, the gunmen demanded his money, and he complied. He recalled that both men had guns and that one was much taller than the other, but he was unable to identify either of the gunmen.

Officer Joseph Smith of the Memphis Police Department, who was two blocks away from the grocery when he heard gunshots, testified that he walked to the next block in an attempt to identify the source of the shots. He recalled that as he did so, his partner received notification of a 911 hang-up call from the grocery. Officer Smith, who estimated that it was less than a minute from the time he heard the gunshots to the time he arrived at the store, testified that he learned about the robbery from Broome and began an investigation while his partner initiated the report. According to Officer Smith, he found at least one spent shell casing, one unspent round, and a wallet, which was later determined to be that robbed from Broome. Officer Smith also recalled that Broome identified a suspect but did not state his name.

Officer Wyley Taylor, Jr., who was assigned to investigate, testified that he met Charlena Davis, the defendant's sister, who consented to a search of her apartment on the day after the robbery. In a kitchen cabinet, Officer Taylor found a .380 Lawson automatic pistol later identified by Broome as that used in the robbery.

The defendant did not present any witnesses at trial.

The defendant was charged with four counts of aggravated robbery. The first two counts alleged that Ms. Jones was the victim, and the second two alleged that Broome was the victim. Each set of counts contended in the alternative that the defendant committed aggravated robbery either by means of a deadly weapon or by putting the victim in fear. After the jury convicted the defendant of all four counts, the trial court merged counts one and two and counts three and four.

On appeal, the defendant argues that there is a fatal variance between counts one and two in the indictment and the proof introduced by the state at trial. The defendant argues that the money taken from the cash register belonged to the owner of the store, Broome, and that "no property belonging to [Ms. Jones] was taken during the course of this robbery." It is his contention, therefore, that the proof does not conform to the indictment.

Provisions of both the federal and Tennessee constitutions guarantee the criminally accused knowledge of the "nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to comply with these constitutional guidelines, an indictment or presentment must provide notice of the offense charged, adequate grounds upon which a proper judgment may be entered, and suitable protection against double jeopardy. Tenn. Code Ann. § 40-13-202; State v. Byrd, 820 S.W.2d 739 (Tenn. 1991); State v. Pearce, 7 Tenn. 65, 67 (1823). A variance between an indictment and the evidence presented at trial is not fatal unless it is both material and prejudicial, State v. Moss, 662 S.W.2d 590 (Tenn. 1984), thus affecting the substantial rights of the accused,

State v. Mayes, 854 S.W.2d 638, 639-40 (Tenn. 1993) (citing Berger v. United States, 295 U.S. 78, 82 (1935)). When the indictment and the proof substantially correspond, the defendant is not misled or surprised at trial, and there is protection against a second prosecution for the same offense, the variance is not considered material. Moss, 662 S.W.2d at 592.

Aggravated robbery is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1) - (2). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

Here the defendant argues that because the money in the cash register did not belong to Ms. Jones, there was no "taking" from her. A robbery, however, may be actual or constructive. State v. Edwards, 868 S.W.2d 682, 700 (Tenn. Crim. App. 1993); see also State v. Nix, 922 S.W.2d 894, 900-01 (Tenn. 1996). "It is actual when the taking is immediately from the person; and constructive when in the possession or in the presence of the party robbed." Morgan v. State, 220 Tenn. 247, 251-52 (1967).

Additionally, in the context of a robbery conviction, "owner" means a person, other than the defendant, who has possession of or any interest in property, even though that possession or interest is unlawful. Tenn. Code Ann. § 39-11-106(a)(26). Evidence of possession is ordinarily sufficient proof of ownership.

Testimony at trial by several witnesses established that Ms. Jones was forced to empty the grocery store's cash register at gunpoint, which is sufficient to show a "taking" from her for the purposes of the aggravated robbery conviction on counts one and two. Furthermore, the record also shows a separate "taking" of property from Broome, namely his wallet and his gun. That, in our view, is sufficient for the purposes of the aggravated robbery conviction on counts three and four. There is no material variance between the indictment and the evidence presented at trial; therefore, the defendant's contention is without merit.

Secondly, the defendant argues that the evidence of his identity as the perpetrator was insufficient to support the verdict beyond a reasonable doubt. He contends that his convictions are based solely on the testimony of the victims, that there was no physical evidence presented to connect him with the robbery, and that the evidence is therefore insufficient to warrant a finding of guilt beyond a reasonable doubt.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable

to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

The defendant offers no other reasoning for the insufficiency of the evidence presented at trial other than discrediting the testimony of the victims Broome and Ms. Jones. Through those witnesses, the state established each and every element of the offenses. Even if their testimony is the only evidence connecting the defendant to the crimes, the evidence is legally sufficient. As indicated, this court may not resolve questions of witness credibility on appeal. That function is solely within the province of the trier of fact. See, e.g., State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). The jury accredited the testimony of the state's witnesses, as was its prerogative, and was authorized to make reasonable inferences from the proof presented. The evidence was, therefore, sufficient to support the convictions.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE