# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 14, 2015

## ALEJANDRO AVILA-SALAZAR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-A-32      Mark J. Fishburn, Judge**

_____

**No. M2014-01665-CCA-R3-HC - Filed February 20, 2015**

_____

In 2006, the Petitioner, Alejandro Avila-Salazar, pleaded guilty to second degree murder and attempted aggravated rape, and the trial court ordered the Petitioner to serve an effective sentence of forty years. The Petitioner filed a petition for post-conviction relief, which was dismissed, and this Court affirmed the dismissal. *Alejandro Avila-Salazar v. State*, No. M2008-02120-CCA-R3-PC, 2009 WL 3029604, at *1 (Tenn. Crim. App., at Nashville, Sept. 22, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010). Several years later, in 2014, the Petitioner filed a petition for habeas corpus relief, alleging that his guilty pleas were not knowingly and voluntarily entered because his sentence violated the jurisdictional limits of the trial court. He further contended that the indictment against him failed to apprise him of the offense that he was being called to defend. The habeas corpus court summarily dismissed the petition. On appeal, the Petitioner contends that the habeas corpus court erred when it summarily dismissed his petition because his constitutional rights had been violated. He further contends that he had been improperly denied "indigent status." After a thorough review of the record and applicable authorities, we affirm the habeas corpus court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, J., joined.

Alejandro Avila-Salazar, Clifton, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Sarah Davis, Assistant District Attorney, for the appellee, State of Tennessee.

# OPINION

## I. Facts

In 2006, the Petitioner pleaded guilty to second degree murder and attempted aggravated rape, and the trial court ordered an effective sentence of forty years. The Petitioner filed a petition for post-conviction relief alleging that he received the ineffective assistance of counsel and that he did not enter his guilty plea knowingly and intelligently. This Court summarized the evidence presented at the post-conviction hearing as follows:

> Testimony at the Petitioner's post-conviction hearing established that the charges to which the Petitioner pleaded guilty arose from an incident in which he and a co-defendant raped and killed a woman in a laundromat. The Petitioner testified that his court-appointed attorney ("trial counsel") represented him throughout the plea process.

> The Petitioner, who had no previous experience in the legal system, testified that trial counsel met with him only three times. Each meeting occurred in jail. The Petitioner, who is not fluent in English, communicated with trial counsel using an interpreter who, he said, was not very skilled in Spanish. The Petitioner said trial counsel assured him he would receive only three to four years in jail, when in fact the Petitioner's plea agreement offered an effective sentence of forty years. The Petitioner also alleged that trial counsel did not discuss evidence with him, allow him to review discovery materials provided by the State, or tell him that the State had a surveillance video of him leaving the laundromat at which the crime occurred. Trial counsel also did not tell the Petitioner exactly what would happen if he went to trial and lost, advising only that the Petitioner would spend the rest of his life in prison. The Petitioner said he desperately wanted to go to trial, but that trial counsel resisted and called the Petitioner "a stupid young man." The Petitioner also asserted that trial counsel never tried to suppress the statement he had made to police in which he admitted choking the victim with his belt while attempting to rape her.

> Although trial counsel told the Petitioner he was allowed to speak at his plea acceptance hearing, the Petitioner testified that trial counsel instructed him not to say anything except "yes" to the judge's questions. When the judge said that the Petitioner would be sentenced to forty years, the Petitioner turned to trial counsel for clarification. Trial counsel told him not to worry and that he would receive three to four years.

On cross-examination, the Petitioner confirmed that he had, at his plea acceptance hearing, agreed that he understood he would be sentenced to forty years. He also had affirmed that he had no complaints about trial counsel at that time, that he understood the possible sentences for the offenses with which he had been charged, and that he understood the rights he was waiving by declining to go to trial. The Petitioner also confirmed that he had asked his original lawyer, an assistant public defender, to withdraw because she was "not working for him," but never complained about trial counsel or his interpreter. When asked at his post-conviction hearing why he believed trial counsel was ineffective, the Petitioner said, "As a defense attorney he should have taken at least one charge from me." The Petitioner said he would not have pleaded guilty if he and trial counsel had met more often or if he had understood his plea agreement or his legal options.

Trial counsel testified for the State at the post-conviction hearing. He said that he and the Petitioner met four times in jail and at least six more times in the courthouse. Trial counsel brought an interpreter to every meeting after the first one. The case involved "massive discovery," including audiotapes, a video, police reports, and pictures of the crime scene. Trial counsel reviewed these items with the Petitioner a number of times, including the Petitioner's inculpatory statement to police. The two did not watch the surveillance video because the Petitioner said he had already seen it.

The Petitioner's only defense was that his co-defendant was responsible; trial counsel noted, however, that the Petitioner's statement to police was contrary to this defense. The Petitioner wanted to go to trial, however. Although trial counsel advised him against it, he told the Petitioner he would try the case. Trial counsel discussed the State's offer with the Petitioner many times, relaying that the State offered a forty-year sentence at 100%, and that the Petitioner might get a maximum of 15% of that sentence reduced for good behavior. He told the Petitioner that he would receive fifty-one years if convicted of felony murder. He also discussed lesser-included offenses, but did not believe the Petitioner would be convicted of a lesser-included offense.

Before his last meeting with the Petitioner, trial counsel had prepared to set the case for trial. During the meeting, trial counsel reiterated his opinion that the Petitioner should not go to trial. The Petitioner had tears in his eyes and agreed to plead guilty because he did not want to spend the rest of his life in jail. Trial counsel confirmed that the forty-year sentence appeared on the plea petition the Petitioner signed.

Trial counsel said he never told the Petitioner he would receive three to four years in jail. He also never told the Petitioner not to say anything but "yes" at his plea acceptance hearing. Trial counsel also confirmed that he had filed a motion to suppress the Petitioner's statement to police but that the motion was denied following a hearing. The Petitioner never mentioned any problem understanding the interpreter.

*Avila-Salazar*, 2009 WL 3029604, at \*4. Based upon this evidence, the post-conviction court denied the Petitioner relief. The Petitioner appealed, and this Court affirmed the post-conviction court's judgment. We held:

We initially conclude that the evidence does not preponderate against the post-conviction court's obvious finding that trial counsel's testimony was more credible than the Petitioner's. The Petitioner made a number of claims that may have been seen as lacking credibility, given his satisfaction with trial counsel and his interpreter at the time of his plea, including his assertions that he expected only a three to four year sentence and could not understand his interpreter. The Petitioner also asserted at his post-conviction hearing that the State lacked evidence against him, while acknowledging his inculpatory statement, video evidence, and the existence of a witness who confirmed his presence at the laundromat.

*Id*.

On May 12, 2014, the Petitioner filed a petition for habeas corpus relief. In it, he alleged that his confinement was illegal because he "challeng[ed] the constitutionality of his guilty pleas." He further alleged that the trial court had committed constitutional error by "failing to ensure that the [P]etitioner was aware of a direct consequence of his guilty plea." In his attached memorandum of law, the Petitioner contended that his indictment failed to sufficiently apprise him of the offense against which he was called upon to defend. In his conclusion in the memorandum of law, the Petitioner alleged:

A sentence imposed in direct contravention of a statute is void and illegal. An illegal sentence render[s] a judgment of conviction void.

It is ineffective assistance of counsel and a constitutionally insufficient admonition from a trial court not to advise a defendant of mandatory community supervision for life.

A trial court is constitutionally required to inform a defendant of the

lifetime supervision requirement as part of the plea colloquy when a defendant pleads guilty to violations of certain enumerated code sections.

The State responded:

>     As to the substantive claims, the [P]etitioner makes passing references to an excessive sentence, ineffective assistance of counsel, and involuntary guilty plea. However, he offers no argument on these claims and with regards to his sentence, the judgment attached to the petition shows that he agreed to plea outside his range. In any event, claims of ineffectiveness of counsel are not cognizable in a habeas petition. Claims related to the abridgement of constitutional rights and ineffective assistance of counsel must be raised in a post-conviction petition, as they merely render judgments voidable. *Summers v. State*, 212 S.W.3d 251, 261 (Tenn. 2007).

>     The only claim the [P]etitioner offers argument on is that his indictments are insufficient to vest jurisdiction in the trial court. "[T]he validity of an indictment and the efficacy of the resulting conviction may be addressed in a petition for habeas corpus when the indictment is so defective as to deprive the court of jurisdiction." *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998). . . .

>     The indictments which the [P]etitioner has attached to his petition satisfy *Hill* requirements. Both indictments cite the statutory code section as well as allege the elements of the crimes charged. Accordingly, the [P]etitioner's assertion of inadequate indictments lacks merit and the petition should be dismissed.

The habeas corpus court filed an order summarily dismissing the petition. In the order, the court found that the indictments issued against the Petitioner were valid and the Court was within its jurisdiction to impose such sentence. It is from this judgment that the Petitioner now appeals.

### III. Analysis

On appeal, the Petitioner contends that the habeas corpus court erred when it dismissed his petition for habeas corpus relief because: (1) the indictments against him were constitutionally deficient; and (2) his conviction is void on its face because he accepted a sentence outside of his range and his sentence is excessive. He further contends that the habeas corpus court erred when it denied him "indigent status" and summarily dismissed his

petition. The State responds that the habeas corpus court properly dismissed the Petitioner's petition.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2012). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given de novo review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn.1999).

It is the burden of the petitioner to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn.2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). A habeas corpus court may summarily dismiss a petition without a hearing when the petition "fails to demonstrate that the judgment is void." *Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004); T.C.A. § 29-21-109.

Generally, defenses based upon indictment deficiencies must be presented prior to trial. Tenn. R. Crim. P. 12(b)(2), (f). A valid indictment is essential to prosecution, however, and may be subject to attack at any time if the content does not charge an offense or does not confer jurisdiction. *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn. 1998). The functions of the indictment are to provide notice of the charge, enable entry of a proper judgment upon conviction, and protect against double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991) (citing *State v. Pearce*, 7 Tenn. (Peck) 65, 67 (1823); *State v. Haynes*, 720 S.W.2d 76,

82 (Tenn. Crim. App. 1986)).

## A. Indictment

Article I, section 14 of the Tennessee Constitution provides that "no person shall be put to answer any criminal charge but by presentment, indictment or impeachment." Tenn. Const. art. I, § 14. Article I, section 9 of the Tennessee Constitution guarantees that "in all criminal prosecutions, the accused [has] the right . . . to demand the nature and cause of the accusation against him, and have a copy thereof." Tenn. Const. art. I, § 9. Regarding the necessary content of an indictment, Tennessee Code Annotated section 40-13-202 provides as follows:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

Second degree murder is a knowing killing of another. *See* T.C.A. 39-13-210 (2010). The Petitioner was indicted for first degree felony murder. His indictment for this offense reads:

> THE GRAND JURORS of Davidson County, Tennessee, duly impaneled and sworn, upon their oath, present that:
>
> ALEJANDRO AVILA-SALAZAR AND JOSE NOE GUTIERREZ
>
> on the 27th day of September, 2004, in Davidson County, Tennessee and before the finding of this indictment, did kill Emma Lee Fuller, during the perpetration of or attempt to perpetrate rape, in violation of Tennessee Code Annotated § 39-13-202, and against the peace and dignity of the State of Tennessee.

The Petitioner also pleaded guilty to attempted aggravated rape. The Petitioner was indicted for attempted aggravated rape. Aggravated rape is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

> (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim

reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; and

    (A) Force or coercion is used to accomplish the act; or

    (B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

T.C.A. § 39-13-502 (2010). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101 (2010).

The Petitioner's indictment for this offense reads:

THE GRAND JURORS of Davidson County, Tennessee, duly impaneled and sworn, upon their oath, present that:

    ALEJANDRO AVILA-SALAZAR and JOSE NOE GUTIERREZ

on the 27th day of September, 2004, in Davidson County, Tennessee and before the finding of this indictment, did attempt to intentionally, knowingly,

or recklessly engage in unlawful sexual penetration of Emma Lee Fuller, and Alejandro Avila-Salazar and Jose Noe Gutierrez caused bodily injury to Emma Lee Fuller, in violation of Tennessee Code Annotated § 39-12-101, and against the peace and dignity of the State of Tennessee.

We conclude, as did the habeas corpus court, that the language of the indictments sufficiently apprised the Petitioner of the charges he faced. The indictments referenced the appropriate statute, stated the date of the offense, stated the name of the victim of the offense, and alleged the essential elements of the offenses, including the appropriate mental state. We conclude that the Petitioner was apprised of the nature of the charges against him and protected against double jeopardy. The indictment provided sufficient information upon which the court of conviction could enter a proper judgment. *See Sidney Cleve Metcalf v. David Sexton, Warden*, No. E2011-02532-CCA-R3-HC, 2012 WL 3555311, at *5 (Tenn. Crim. App., at Knoxville, Aug. 20, 2012), *perm. app. denied* (Tenn. Nov. 21, 2012); *Ronald Eugene Gilmore v. Kenneth Locke, Warden*, No. M2005-01235-CCA-R3-HC, 2006 WL 1097493, at *3 (Tenn. Crim. App., at Nashville, Mar. 30, 2006). We cannot agree with the Petitioner's contention that his indictment "fails to inform him of the required behavior he is supposed to be held accountable [for]." He is not entitled to relief on this issue.

### B. Sentence

The Petitioner next contends that the trial court erred when it dismissed his habeas corpus petition because his convictions are void on their face because he accepted a sentence outside of his range and his sentence is excessive.

The guilty plea transcript is included in the record from the Petitioner's appeal of the denial of his petition for post-conviction relief. This Court may take judicial notice of our records on appeal. *See Harris v. State*, 301 S.W.3d 141, 147 n. 4 (Tenn. 2010) ("The Court may take judicial notice of its own records.") (citing *State v. Lawson*, 291 S.W.3d 864, 869-70 (Tenn. 2009)). That transcript reveals that the trial court informed the Petitioner that he was indicted for felony murder, a crime that carried a "Mandatory sentence of life in the penitentiary with parole," meaning the Petitioner "would have to serve 51 years before [he] would be eligible to get out of prison." The Petitioner indicated he understood as much. The trial court stated that the Petitioner also faced a charge of attempted aggravated rape, which carried a three to fifteen year sentence, and that the Petitioner would be punished separately for each conviction, if convicted at trial.

The trial court ensured that the Petitioner understood that he was "pleading guilty to the lesser included offense in count one, second degree murder" and was going to be sentenced to forty years, to be served at 100%. The trial court stated:

-9-

> [B]ecause of your lack of prior felony convictions, if you were found guilty of second degree murder by a jury at the trial of the case, then the maximum punishment I would be allowed to impose at a sentencing hearing would be 25 years. Do you understand that?

The Petitioner indicated that he understood and that he waived his right to a trial. The trial court stated: "But as part of waiving . . . your right to a trial, are you agreeable to accept the 40-year sentence, which is greater than the maximum I could impose at trial?" The Petitioner conferred with his attorney, and then stated: "What I want is for you to sentence me now to 40 years." The trial court then said "I'm going to do that . . . but there are certain things that I am required to do by law before I can accept your guilty plea." It went on to state:

> I have to know whether or not that under the law, if you are convicted of first degree murder you would receive a sentence of 60 years at 100 percent. Under the law if you were found guilty of second degree murder by a jury, maximum punishment I could impose would be 25 years at 100 percent. This agreement has you pleading guilty to second degree murder, but it has you pleading to 40 years at a hundred percent, which is greater than 25 years, but it's less than the 60 years that you could receive if you were found guilty of first degree murder.

> My question is: Are you willing to accept the 40-year sentence, which is above the range that you qualify in?

The Petitioner responded, "Yes." The Petitioner received the sentence that was agreed upon in his plea agreement under the 1989 Sentencing Act. "[A] knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997). The Petitioner clearly agreed to the forty-year sentence, and the trial court ensured on multiple occasions in multiple ways that the Petitioner understood that he was pleading out of his sentencing range. The Petitioner is not entitled to relief on this issue.

Because the Petitioner failed to demonstrate that his judgment was void, the habeas corpus court properly summarily dismissed his petition without a hearing. *See Hickman*, 153 S.W.3d at 20; *see also* T.C.A. § 29-21-109. Further, the record indicates that the Petitioner is indigent and was considered so by the habeas corpus court, negating any argument he makes in this regard.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the habeas corpus court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE