IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2015

**MYRON TATE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 102931      Bob R. McGee,  Judge**

_____

**No. E2014-01699-CCA-R3-PC – Filed May 15, 2015**

_____

The Petitioner, Myron Tate, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief. On appeal, the Petitioner argues that he received ineffective assistance of counsel because his trial counsel failed to advise him regarding the sufficiency of his indictment. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Myron Tate.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Charme P. Allen, District Attorney General; and Kevin James Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On February 8, 2011, a Knox County Grand Jury returned an indictment in case number 96453 charging the Petitioner with especially aggravated kidnapping, aggravated robbery, aggravated burglary, and possession of a firearm during a dangerous felony. On September 18, 2012, a Knox County Grand Jury returned a four-count indictment in case number 100291 charging the Petitioner with first degree felony murder and employing a firearm during a dangerous felony. Counts one, two, and three of the September 18 indictment charged alternate theories of felony murder, alleging, respectively, that the Petitioner killed Roderick L. King during the perpetration of a theft, burglary, or robbery.

## I. Guilty Plea Submission Hearing

On September 9, 2013, the trial court accepted the Petitioner's guilty pleas for second degree murder in case number 100291 and aggravated robbery in case number 96453.[1] The Petitioner received a total effective sentence of twenty-eight years, with twenty years to be served at 100 percent, less up to fifteen percent credit, and eight years to be served at thirty percent.

At the guilty plea submission hearing, the State recounted the following facts underlying the Petitioner's guilty plea in case number 96453. Around midnight on October 19, 2010, the Petitioner kicked in the door of Juan Bickerstaff's apartment. The Petitioner and two other men entered the apartment and demanded money. Each man had a gun. Mr. Bickerstaff gave them around $320 in cash. The three men fled on foot from the scene. Mr. Bickerstaff was later able to identify the three men, one of whom was the Petitioner, in a line-up.

With respect to case number 100291, the State gave the following factual account. On August 29, 2012, Mona Harris placed a 911 call after she discovered her neighbor, Mr. King, unresponsive in his apartment. When the Knoxville Police Department ("KPD") responded to the scene, they found Mr. King, who had been shot three times. Christy Horner approached the KPD investigators and told them that she had been in the apartment when Mr. King was shot. She told them that the Petitioner, along with an unidentified male and female, knocked on Mr. King's apartment door. Ms. Horner answered the door, and the Petitioner and another black male entered with guns. The Petitioner shot Mr. King and took marijuana, money, and a cell phone from the apartment.

At the guilty plea submission hearing, the trial court engaged the Petitioner in a plea colloquoy. The Petitioner confirmed that he understood the details of the plea agreement offered by the State. The Petitioner indicated that he understood that his convictions could be used to enhance his punishment if he were ever convicted of another crime. He also responded affirmatively when asked whether he had reviewed the petition to plead guilty with his attorney.

The Petitioner said that he understood he was waiving his rights to a jury trial, to confront witnesses against him, and to remain silent. The trial court explained that after pleading guilty "there [would] be no further proceedings or hearings to determine your guilt," and the Petitioner indicated that he understood.

---

[1] On that date, the Petitioner also pled guilty in case number 102222 to felony evading arrest. However, he does not challenge that conviction in this post-conviction appeal.

The Petitioner acknowledged that he was entering his guilty pleas freely, voluntarily, and knowingly and further stated that he was entering guilty pleas because he was in fact guilty. When asked whether he was satisfied with his counsel's performance, he responded affirmatively. He denied having any questions for the court "about anything at all." The trial court accepted the Petitioner's guilty pleas.

## II. Post-Conviction Hearing

On December 23, 2013, the Petitioner filed a pro se petition for post-conviction relief. In that petition, the Petitioner argued that his indictments in case numbers 100291 and 96453 were defective because they failed to state the felonies underlying his charges for first degree felony murder and possession of a firearm during the commission of a dangerous felony. Thereafter, counsel was appointed, and an amended petition was filed on March 27, 2014. In the amended petition, the Petitioner contended that he received ineffective assistance of counsel and alleged a denial of due process. The Petitioner again asserted that the indictments in case numbers 100291 and 96453 were defective because they did not "provide adequate notice of the offenses charged." The Petitioner argued that "he only arrived at this conclusion after his guilty pleas had become final," and he would not have pled guilty if trial counsel had informed him that the defective indictments left the trial court without jurisdiction to convict him.

On August 11, 2014, the court held a post-conviction hearing. In his opening statement, post-conviction counsel admitted that there was nothing "specifically wrong with the plea agreement" and explained that the Petitioner was "not asking the [c]ourt to find specifically that the indictment was insufficient." Instead, post-conviction counsel argued that the court should grant relief because the Petitioner "had a legitimate question in his mind about [the indictments] to the extent that he would've wanted to contest th[e] issue and get an answer."

The court asked whether the Petitioner was making a "generalized due process argument about lack of notice." Counsel attempted to clarify by responding, "To the extent that he's claiming ineffective assistance of counsel, it would be that his attorney did not advise him sufficiently with regard to the elements of the indictment and sufficiency of the indictment." Counsel argued that because the Petitioner is "exclusively" the person who can waive his rights, "in his mind[,] if he wanted to pursue this issue of the sufficiency of the indictment, and was not aware of the issue at the time that he pled guilty," he should be able to withdraw his guilty plea.

The Petitioner was the sole witness at the hearing. According to the Petitioner, he discussed his case with trial counsel prior to entering his guilty pleas but did not have a conversation with him regarding the specific charges against him. He testified that he

-3-

knew he had been charged with felony murder but that he did not understand what that meant at the time. According to the Petitioner, he thought the charge meant that he could be sentenced to death. He alleged that he "wasn't informed proper[ly] in the indictment to be able to distinguish . . . the outlines of what [he] would be charged with." The Petitioner testified that trial counsel provided him with a copy of the indictments prior to entering his guilty pleas and that he read them. According to the Petitioner, he did not have any questions about the indictments at the time. He testified that trial counsel "just kept telling [him] that this would be the best offer for [him] to take."

The Petitioner testified that, although he had discussed his case with trial counsel prior to entry of his guilty pleas, they did not discuss the possible sentences for first degree murder and, furthermore, he did not even understand that his felony murder charge was the equivalent of a first degree murder charge. When asked what he thought he had been charged with, the Petitioner responded, "I guess a robbery." However, he later testified that he knew Mr. King had been killed, and he understood that he was accused of killing Mr. King. He remembered that trial counsel discussed the term "second degree murder" with him, but he testified that he did not know what that term meant and did not understand the difference between first and second degree murder.

Although he initially testified that trial counsel never explained to him what "first degree murder in perpetration of a felony" meant, he later acknowledged that trial counsel did discuss with him the elements that the State would have to prove in order to convict him. The Petitioner also agreed that he and trial counsel discussed the merits of going to trial.

According to the Petitioner, trial counsel first informed him about the plea deal one week before the guilty plea submission hearing. The Petitioner alleged that he did not read the waiver of rights form before he signed it, although he had discussed the form with trial counsel, and he "just signed where [he] was supposed to sign." According to the Petitioner, trial counsel advised him to take the plea deal. The Petitioner testified that he thought trial counsel "didn't want to fight the case." The Petitioner agreed that he told trial counsel he was interested in the plea deal, and he understood that by accepting the plea deal, he was receiving a lesser sentence than he would have received if he had been convicted of first degree murder.

The Petitioner acknowledged that, at the guilty plea submission hearing, he told the trial court that he understood he was waiving his rights and that he was actually guilty of the charges against him. However, he explained that he answered that way because "it would help with parole if [he took] the sentence." According to the Petitioner, he believed that he would be able to appeal his convictions after entering the guilty pleas, although he could not say what issue he expected to appeal.

The Petitioner testified that after he entered his pleas, he continued to "study" his indictments and came to believe that they did not properly "state facts constituting the offense[s] in ordinary . . . language." The Petitioner continued, "[The indictments] don't state facts or let me know the felony class or the accusation." The Petitioner was able to research the issue in the prison's library, and he eventually came to the conclusion that his "indictment[s] w[ere] bad." According to the Petitioner, if he had been able to research the issue prior to pleading guilty, he would not have accepted the plea deal.

The Petitioner testified that he understood that he would have to go to trial on the original indictments if post-conviction relief was granted, but he said that he wanted to pursue that course so that he could challenge the sufficiency of the indictments in the trial court or on direct appeal. Furthermore, the Petitioner acknowledged that he would be facing a substantially longer sentence if he was to go to trial and was convicted as originally charged. However, he believed that, based on his reading of the pertinent law, the issue of the sufficiency of the indictment was worth pursuing even if he ultimately received a longer sentence.

On cross-examination, the Petitioner denied that trial counsel had gone over the indictment with him "count by count." The State then introduced a copy of a letter trial counsel sent to the Petitioner, which set forth each count of the indictments as well as the sentences he would receive if he accepted the plea offer. The letter was signed by the Petitioner. The Petitioner recognized the letter and agreed that he received a copy of the letter one week prior to entering his guilty pleas. He further agreed that the letter addressed each count of the indictments individually and explained the minimum and maximum potential punishment he could receive if he chose to proceed to trial and was convicted.

The Petitioner further agreed that when he entered his guilty pleas, he did so voluntarily. According to the Petitioner, he was satisfied with trial counsel's representation until he began researching the indictment issue. Although trial counsel was apparently at the post-conviction hearing, he was not called to testify. The post-conviction court orally denied relief, and this timely appeal followed.

## ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred by finding that the indictments were sufficient and that the Petitioner received effective assistance of counsel. The Petitioner's argument on appeal is difficult to explain. The Petitioner admits that the charging instrument was not actually defective, but he argues that, had trial counsel properly advised him regarding the sufficiency of the indictments, he would have detected what he perceives to be a defect prior to the entry of his guilty pleas and

would not have accepted the plea offer. The State interprets the Petitioner's argument on appeal as being that he was not properly advised of the charges against him and contends that he has waived review of this issue because he failed to raise it before the post-conviction court. The State further responds that, even if the Petitioner's issue is not waived, he has failed to prove that trial counsel was ineffective or that his pleas were involuntarily or unknowingly entered.

First, we do not agree with the State's interpretation of the Petitioner's argument on appeal. As we understand it, the Petitioner's argument continues to be that, because of what he perceives to be defective indictments, he was not properly informed of the charges against him. However, for the reasons set forth below, we conclude that the Petitioner is not entitled to relief.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

The post-conviction court found that the Petitioner's indictments were sufficient. The court noted that the indictments "permit[ted] the accused to prepare a defense," were "sufficiently specific to avoid prejudicial surprise at trial," and were sufficient to "enable[] the accused to preserve a plea of double jeopardy." The post-conviction court reasoned that, to the extent the Petitioner claimed that his plea was not entered knowingly or voluntarily, the Petitioner's argument "depends entirely on the proposition that the presentment is insufficient and this [court has] just held that it's not insufficient." The court found that the Petitioner was well-apprised of the charges against him and that trial counsel explained the charges and the plea agreement to the Petitioner "repeatedly" and "in detail." The post-conviction court denied relief, concluding that "there [was] no objective basis upon which to make any finding that the [Petitioner's] plea was in any way involuntary or unknowing."

The record supports the post-conviction court's conclusion. At the post-conviction hearing, counsel for the Petitioner admitted that there was no defect in the indictment. He further admitted that there was no real problem with the plea agreement itself. The Petitioner testified that he was satisfied with trial counsel's representation of him up until the point that he began independently researching the sufficiency of the indictments.

Generally, defenses based upon indictment deficiencies must be presented prior to trial. Tenn. R. Crim. P. 12(b)(2), (f). However, a valid indictment is essential to prosecution and may be subject to attack at any time if the content does not charge an offense or does not confer jurisdiction. Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998). The functions of the indictment are to provide notice of the charge, enable entry of a proper judgment upon conviction, and protect against double jeopardy. State v.

Byrd, 820 S.W.2d 739, 741 (Tenn. 1991) (citing State v. Pearce, 7 Tenn. (Peck) 65, 67 (1823); State v. Haynes, 720 S.W.2d 76, 82 (Tenn. Crim. App. 1986)). Regarding the necessary content of an indictment, Tennessee Code Annotated section 40-13-202 provides as follows:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

In the present case, in case number 100291, counts one, two, and three of the indictment alleged alternate theories of felony murder. Each count, respectively, stated that the Petitioner killed Mr. King on August 29, 2012, in violation of Tennessee Code Annotated section 39-13-202 during the perpetration of a theft, burglary, or robbery. Likewise, in case number 56543, the indictment alleged that on October 19, 2012, the Petitioner knowingly "by putting [Mr.] Bickerstaff in fear," took "a quantity of good and lawful money, . . . said taking accomplished with a deadly weapon, in violation of [Tennessee Code Annotated section] 39-13-402." After reviewing both indictments, it is clear that the charging instruments referenced the appropriate statutes, stated the dates on which the respective offenses occurred, and alleged the essential elements of the offenses, including the appropriate mental states. Therefore, the Petitioner was adequately apprised of the nature of the charges against him and was protected against double jeopardy. See Byrd, 820 at 741. This conclusion is bolstered by the evidence adduced at the post-conviction hearing, including the Petitioner's own testimony.

The Petitioner testified that he knew he was accused of committing a robbery and further understood that he was charged with Mr. King's murder. Additionally, the State introduced a detailed letter that trial counsel sent to the Petitioner. That letter set forth each individual count from each indictment; listed the minimum and maximum potential sentences; and detailed the plea offer from the State. The Petitioner indicated that he wished to accept that plea offer and signed the letter. At the guilty plea submission hearing, the Petitioner acknowledged that he was pleading guilty to second degree murder and aggravated robbery because he was actually guilty of those offenses. Therefore, although the Petitioner may now have "a question that to him is a legitimate question about the legitimacy of the indictment[s] . . . and the sufficiency of the indictment[s]," it is unclear exactly what more trial counsel could have done to explain the indictments and the charges contained therein to the Petitioner. The Petitioner has failed to prove that his indictments were defective or that trial counsel was ineffective, and he is, therefore, not entitled to relief.

## CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE